Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000681
22-APR-2015
09:25 AM

NO. CAAP-13-0000681

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


REGINALD PETTWAY, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDINGS PRISIONER NO. 11-1-0006)
(CRIMINAL NO. 08-1-0643)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Leonard and Reifurth, JJ.)

Petitioner-Appellant pro se Reginald Pettway (**Pettway**) appeals from the "Order Denying Petition To Vacate, Set Aside, Or Correct Judgment Or To Release Petitioner From Custody," filed on April 4, 2013, in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Pettway contends that circuit court erred in denying his a February 2, 2011 "Petition for Post-Conviction Relief (Petition To Vacate, Set Aside, Or Correct Judgment Or To Release Petitioner From Custody)" pursuant to Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (**Rule 40 Petition**) because the Hawai'i Paroling Authority (**HPA**) of Respondent-Appellee State of Hawai'i, (1) deviated from its guidelines when setting Pettway's minimum terms of imprisonment and (2) violated Pettway's due process rights by not granting him access to all information that HPA considered.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to

---

[1]    The Honorable Steven S. Alm presided.

the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Pettway's appeal is without merit.

I.   Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b) Non-Compliance

Pettway's opening brief fails to comply with the requirements of HRAP Rule 28(b).  The opening brief does not include a standard of review section or a statement of points on appeal.[2]  Non-compliance with HRAP Rule 28 is sufficient grounds to dismiss Pettway's appeal.  See HRAP Rule 30 ("When the brief of an appellant is otherwise not in conformity with these rules, the appeal may be dismissed . . . .");  see also Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995).  However, in light of an appellant's pro se status, we will address the merits where possible.  See Wagner v. World Botanical Gardens, Inc., 126 Hawaiʻi 190, 193, 268 P.3d 443, 446 (App. 2011);  see also Bettencourt, 80 Hawaiʻi at 230, 909 P.2d at 558 ("[T]his court has consistently adhered to the policy of

---

[2]      HRAP Rule 28 provides in relevant part:

> **Rule 28.   BRIEFS.**
>
>     . . . .
>
>     **(b) Opening Brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
>
>     . . . .
>
>     (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.
>
>     . . . .
>
>     (5) A brief, separate section, entitled "Standard of Review," setting forth the standard or standards to be applied in reviewing the respective judgments, decrees, orders or decisions of the court or agency alleged to be erroneous and identifying the point of error to which it applies.

affording litigants the opportunity to have their cases heard on the merits, where possible." (citation and internal quotation marks omitted)).

II.  Minimum Terms of Imprisonment

"A petition filed pursuant to HRPP Rule 40 is an appropriate means for a prisoner to challenge a minimum term of imprisonment set by the HPA." Nichols v. State, 134 Hawai'i 390, 395, 341 P.3d 1190, 1195 (App. 2014) (citing Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007)). With respect to HPA decisions establishing a minimum term of imprisonment, the Hawai'i Supreme Court has stated that "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." Fagaragan v. State, 132 Hawai'i 224, 234, 320 P.3d 889, 899 (2014) (quoting Coulter, 116 Hawai'i at 184, 172 P.3d at 496). "Under its Guidelines [For Establishing Minimum Terms of Imprisonment], the HPA focuses on three primary criteria to determine the appropriate level of punishment and the minimum term: (1) Nature of the Offense; (2) Degree of Injury/Loss to Person or Property; and (3) Offender's Criminal History." Nichols, 134 Hawai'i at 399, 341 P.3d at 1199. There are three levels of punishment: Level I, II, and III.

In its "Notice and Order of Fixing Minimum Term(s) of Imprisonment", HPA set Pettway's minimum term of punishment at a Level III classification. HPA cited the "Nature of Offense" as the significant factor in determining that level of classification. To satisfy the "Nature of Offense" factor for a Level III classification, the offender must meet one of the following criteria:

> a. The offense was against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others; or
>
> b. The offense involved the manufacture, importation, distribution, or cultivation of substantial quantities of drugs. Paragraph 4, subparagraph (a) or (b) of this section may be used to substantiate the level of involvement of the person in the offense(s);

> c. The offense was committed against the elderly, a
> handicapped person, or a minor, and the conviction was for
> murder, sexual assault, robbery, assault, or kidnapping[.]

Fagaragan, 132 Hawai'i at 239, 320 P.3d at 904 (emphasis omitted).  HPA did not indicate which criteria Pettway met, but it can be presumed that the HPA applied the first criteria for situations when "[t]he offense was against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others[,]" as the other criteria do not apply to the facts of this case.  See id.

HPA Guidelines provide that the "purpose of minimum sentencing guidelines is to provide a degree of uniformity and consistency in the setting of minimum terms while providing the community-at-large, public policy makers and planners, the criminal justice system, and victims and offenders with information as to the criteria used in establishing minimum terms of imprisonment."  The guidelines recognize that the criteria used to determine an offender's punishment level are, "in some instances, a matter of individual interpretation and perception and cannot be completely objective; however, given the complexity of each person's case, certain amounts of subjectivity remain necessary and appropriate."  Furthermore, more detailed explanations are only required "[w]here the absence of a more detailed explanation would prevent our meaningful review of, or leave us in doubt about, whether HPA acted arbitrarily or capriciously in applying its Guidelines[.]"  Nichols, 134 Hawai'i at 399, 341 P.3d at 1199.

In this instance, the record sufficiently shows that Pettway committed offenses against a person and "displayed a callous and/or cruel disregard for the safety and welfare of others[.]"  Pettway was a knowing participant in the violent kidnapping and robbery of Benjamin Grajeda (**Grajeda**) that led to Grajeda's murder.  Pettway's own testimony at the trial of co-defendant Jerrico Lindsey (**Lindsey**) indicates that Pettway acted as more than a passive observer of the crimes that unfolded, but instead was an active participant--choking Grajeda when Grajeda was fighting with co-defendant William Freeman (**Freeman**) and Lindsey, encouraging Grajeda to get into the trunk of Freeman's

car, and throwing Freeman's gun out the window of the car when the police began chasing the co-defendants. The fact that Pettway pled down to robbery in the second degree and kidnapping is of little consequence. The record sufficiently indicates that HPA did not act arbitrarily or capriciously in setting Pettway's minimum terms of imprisonment pursuant to a Level III classification.

III.   Due Process

Pettway contends that he "has never had the opportunity to review any materials including his [Presentence Investigation and Report (**PSI Report**)] to be sure it is based on accurate information, which is a violation to petitioner's Due-Process." In support of his argument, Pettway cites to Hawaii Revised Statutes (**HRS**) § 706-669 (2) and (3) (2014 Repl.).[3]

---

[3]   HRS § 706-669 provides, in relevant part:

> **§706-669 Procedure for determining minimum term of imprisonment.**
>
>        . . . .
>
>        (2) Before holding the hearing, the authority shall obtain a complete report regarding the prisoner's life before entering the institution and a full report of the prisoner's progress in the institution. The report shall be a complete personality evaluation for the purpose of determining the prisoner's degree of propensity toward criminal activity.
>
>        (3) The prisoner shall be given reasonable notice of the hearing under subsection (1) and shall be permitted to be heard by the authority on the issue of the minimum term to be served before the prisoner becomes eligible for parole. In addition, the prisoner shall:
>
>> (a)   Be permitted to consult with any persons the prisoner reasonably desires, including the prisoner's own legal counsel, in preparing for the hearing;
>>
>> (b)   Be permitted to be represented and assisted by counsel at the hearing;
>>
>> (c)   Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; and
>>
>> (d)   Be informed of the prisoner's rights under [paragraphs] (a), (b), and (c).

5

The Hawai'i Supreme Court has held that

> In light of the critical nature of the HPA's determination of the prisoner's minimum term of imprisonment, due process under [a]rticle I, section 5 of the Hawai'i Constitution requires that the prisoner have timely access to all of the adverse information contained in the HPA file. The HPA must disclose such information "soon enough in advance" that the inmate has a "reasonable opportunity to prepare responses and rebuttal of inaccuracies." [Labrum v. Utah State Bd. Of Pardons, 870 P.2d 902, 909 (Utah 1993)]. In the event that the HPA file of the inmate includes sensitive, or confidential personal information, the inmate is entitled to disclosure of a reasonable summary thereof.

De La Garza v. State, 129 Hawai'i 429, 442, 302 P.3d 697, 710 (2013) (remanding case for HRPP Rule 40 evidentiary hearing where "[The] facts suggest[ed] that [p]etitioner may not have been provided all the information in his HPA file.").

The record on appeal indicates that Pettway received a copy of his PSI Report. On October 26, 2009 at Pettway's sentencing hearing, Pettway "stated [that he was] in receipt" of his PSI Report and that he "had no additions/corrections to make." Pettway fails to cite to any facts that would indicate that he did not receive his PSI Report.

Therefore,

IT IS HEREBY ORDERED that the April 4, 2013 "Order Denying Petition To Vacate, Set Aside, Or Correct Judgment Or To Release Petitioner From Custody," entered in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, April 22, 2015.

On the briefs:

Reginald Pettway
Petitioner-Appellant pro se.

Richard W. Stacey
Diane K. Taira
Deputy Attorneys General
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge

6